UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

SOUTHERN CAPITOL ENTERPRISES,
INC., ET AL

VERSUS

CONSECO SERVICES, L.L.C., ET AL

CIVIL ACTION

NUMBER 04-705-JJB-SCR

**RULING ON MOTION FOR SANCTIONS
AND/OR ADDITIONAL DISCOVERY ORDERS**

Before the court is a Motion for Sanctions and/or Additional Discovery Orders filed by plaintiffs Southern Capitol Enterprises and F. David Tutt.  Record document number 33.  The motion is opposed by defendants Conseco Health Insurance Company and Conseco Services, L.L.C. (collectively, Conseco).[1]

Plaintiffs' motion for sanctions and/or additional discovery orders is part of an ongoing electronic discovery dispute.  The present motion focuses on the court's discovery ruling dated October 10, 2007 and the plaintiffs' claim that the defendants failed to fully comply with that order.[2]  Plaintiffs' motion addresses the specific areas which they assert are deficient and requests that the court enter an order: (1) awarding the plaintiffs reasonable expenses and attorney's fees for the costs incurred in

---

[1] Record document number 34.  Plaintiffs and defendants also filed supplemental memoranda on June 13, 2008.  Record document numbers 37 and 38, respectively.

[2] Record document number 27, Ruling on Consolidated and Resubmitted Motion to Compel.

filing this motion and for having to pursue this discovery since November 2007;[3] (2) requiring the defendants to produce all outstanding documents within 20 days, or face additional sanctions.[4]  Plaintiffs also asserted that because of the nature and extent of the electronic data produced there may be additional problems with the production that they have not yet detected.  Therefore, the plaintiffs asked for more time after any additional production ordered by the court in order to identify any remaining issues.

A review of the discovery items that remain in dispute shows that some of the plaintiffs' requests for additional production and/or sanctions are supported, but the remaining are not.  Each of the specific issues raised by the plaintiffs are addressed below.

Reserve Reports

Conseco was ordered to produce the most current group reserve reports obtainable on a CD-ROM in the Microsoft Access format.[5]  Plaintiffs stated in their supplemental memorandum that

---

[3] Plaintiffs estimated the amount of fees and expenses at this time is $10,000.

[4] In their initial memorandum, the plaintiffs stated that if the defendants failed to remedy all the issues raised by the motion, they should be allowed to have a computer expert access the defendants' computer to obtain the needed data, with all costs and fees of the expert to be paid by the defendants.  However, in their supplemental memorandum the plaintiffs did not mention this and apparently have dropped this request.

[5] Record document number 27, p. 9.

2

the reservice data on one active group still has not been provided. Plaintiffs identified Group No. 44248-Howard County.  In response, the defendants asserted that they have already explained that this group is not in fact one of the plaintiffs' groups.  This group appeared in the plaintiffs' commission records because of an error in coding.[6]

Based on the defendants' explanation no further production or sanctions will be ordered with respect to the monthly group reservice reports.[7]

Missing Plan Code Keys

In their supplemental memorandum the plaintiffs stated that they were still missing 29 plan codes.  Defendants responded that a spreadsheet with the explanation for these plan codes was sent to the plaintiffs on June 13, 2008.

Counsel for the plaintiffs advised the court by letter dated July 16, 2008 that this issue was resolved.[8]

Missing Hierarchies and Incomplete Policy Lists

Plaintiffs complained about the lack of hierarchies for individual and group policies within the Southern Capitol

---

[6] Record document number 33, Exhibit A, p. 37 of 48, e-mail from Gary Howard to Layne Lee, Tuesday, March 4, 2008; defendants Exhibit C, affidavit of Andrea Cruzan.

[7] These documents were the subject of Request for Production Number 20.  Record document number 27, pp. 8-9.

[8] Record document number 39.

Enterprises groups.  Initially, the plaintiffs asserted that the defendants failed to produce hierarchies for 34,073 policies. Defendants responded that they have provided supplemental information related to the hierarchies.  They noted that because of the volume of information certain errors in retrieval did occur, but the problems have been or are being resolved.  Defendants also explained that some policies had missing hierarchies because they did not have premium payments or did not generate commissions.[9]

Plaintiffs stated in their supplemental memorandum that the defendants have still failed to produce hierarchy data for almost 13,000 known policies, and the data on each policy is critical so that they can determine whether they are listed to receive commissions, and if so, at what level.  Defendants asserted that there are many valid reasons that known policies may not have any hierarchy data, so that the absence of hierarchy data is not itself an indication of an error.  Defendants also stated that they have repeatedly attempted to extract all the hierarchy data requested by the plaintiffs from several different operating systems and have done their best to be thorough and accurate.  Defendants noted that the plaintiffs have not complained that they do not have adequate information to reasonably calculate their damages or prepare for

---

[9] Defendants Exhibit B, affidavit of James Such.  Such's affidavit did not give any estimate of how many missing hierarchies could be attributed to the absence of premium payments or commissions.

trial. Therefore, according to the defendants, the record does not support an order to produce additional hierarchy data or the imposition of sanctions.

With regard to the incomplete policy lists, the defendants acknowledged an error in the parameters used in their retrieval program, and admitted that a deficient production of policy lists resulted because of the error. Defendants corrected this problem and did a supplemental production. Nevertheless, the plaintiffs asserted that the production is still not complete because more than 1,000 policies still appear in the defendants' hierarchy files and reservice database, but no basic policy data has been produced on them. In response, the defendants stated that they would soon be producing additional policy data from two small operating systems that took longer to retrieve, and that other than these sources they have no where else to look for the information.

Defendants have explained why there is no hierarchy data for some policies, and have stated their efforts to thoroughly and accurately retrieve all of the hierarchy data for a multi-year span from several different operating systems. Defendants also explained that they have no other sources to search for basic policy data on the 1,000 policies. While the plaintiffs asserted that the hierarchy data on each and every policy is critical, they have not stated that the hierarchy information that they do have is inadequate to prepare for trial or prove their claims and damages.

Nor have the plaintiffs made such statements with regard to the 1,000 policies for which the defendants have not been able to produce policy data.

Perfection in document production is not required. Damages only need to be proved to a reasonable certainty, and experts can extrapolate and estimate from available data in order to perform calculations and provide opinions. In these circumstances Rule 26(b)(2)(C)(iii), Fed.R.Civ.P., comes into play. At this point in the litigation, the likely benefit that could be obtained from having more hierarchy or policy data is outweighed by the burden and expense of requiring the defendants to renew their attempts to retrieve the electronic data. This case has been pending more than four years and the trial has been delayed because of discovery problems, but significant progress has been made with all but a few issues being completely resolved. Considering the history of this electronic discovery dispute and the relevant factors under Rule 26,[10] it is time to move on with expert discovery and the ultimate resolution of this case. Defendants will be ordered to produce the policy lists/data from the two operating systems within 30 days. Other than this production, no further production of hierarchies for policies or policy lists will be required.

---

[10] Under Rule 26(b)(2)(C)(iii) the court considers the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

<u>Duplications and Inconsistencies in Request
     Numbers 18, 21 and 27</u>

Plaintiffs asserted that another significant problem with the defendants' responses to Requests 18, 21 and 27 is that the Excel policy data files contain duplications and inconsistencies, which affect their ability to do accurate calculations.[11] Plaintiffs also stated that it should not be their responsibility to clean up duplications in the defendants' data.  Plaintiffs requested that the defendants run the Excel files again to eliminate all duplicates, or explain why duplicate and contradictory data has been provided.

While the defendants responded that they had re-run the files, supplemented their responses, and fixed these problem, the plaintiffs stated that the defendants' production of more data did not resolve the issue.  Defendants also stated that, because of the overlapping nature of the policy data requested, duplications are a natural result of computer searches used to retrieve the data. Defendants asserted that the plaintiffs failed to explain why they cannot weed out the duplications themselves, or how any alleged inconsistencies in the data keep them from understanding or using it.

Defendants' arguments are persuasive.  The duplications and discrepancies in the premium amounts are apparent from a review of the lists.  Where duplicate policies are listed and the premium

---

[11] Plaintiffs Exhibit D, printout of first 50 pages provided to defendants illustrating duplications/inconsistencies.

7

amounts are the same, the plaintiffs can easily eliminate any duplicates. Where there are duplicate policies listed with different premium amounts, the plaintiffs' experts can choose how they want to use this data in their calculations and explain how the discrepancies affected their analysis. Simply put, the plaintiffs' arguments are insufficient to require the defendants to eliminate all duplicates and provide only one entry, or further explain why duplicate and contradictory data was produced.

### Corrupted Non-Vested Agent List

Defendants conceded that there have been problems with their production of agent lists. After the plaintiffs discovered that the initial Excel list of non-vested agents produced by the defendants was garbled and corrupted, the defendants produced another compact disc with the information, and they believed that this resolved the issue. However, the plaintiffs stated in their supplemental memorandum that the new version still has a problem – the totals provided are consistently higher than the actual sum of the component data that supposedly make up the totals. Plaintiffs want this corrected because they do not want their experts to rely on incorrect data.

Defendants stated that they are in the process of reviewing and correcting the problem and asked for the opportunity to finish this process.

In the same July 16, 2008 letter mentioned above, plaintiffs' counsel advised the court that this issue has also been resolved.

Incomplete Agent Lists

Plaintiffs asserted that the agent lists produced in response to Request for Production Number 34 are incomplete. Defendants responded that despite their initial belief, they have discovered that they are unable to produce a list of vested agents who were within the plaintiffs' hierarchy. Defendants explained that at the time of the plaintiffs' termination, the computer system terminated the plaintiffs' systematic relationship with down-line agents. Once the termination occurred, any link to the plaintiffs in the computer system was dropped and cannot now be restored.

Based on the defendants' statement that the list cannot be generated as initially proposed, the plaintiffs requested that the court revisit its order with regard to Request Number 34 and require production of the specific information that the plaintiffs originally sought. Defendants maintained that this would be an overly burdensome task that would require 427,180 individual manual retrievals of monthly commissioner statement summary pages.[12] Nevertheless, the defendants agreed to carry out the plaintiffs' suggestion that the agent lists can be obtained by using the "writing agent" field from the list of policies that are the subject of Requests 18 and 21.[13]

Therefore, the defendants will be given 30 days to retrieve

---

[12] Defendants noted that thus far the plaintiffs have only identified one agent who received funds that should have reverted to them.

[13] Record document number 37, p. 6.

9

and produce the agent lists by using the information on policies obtained in Request for Production Numbers 18 and 21.

<u>Plaintiffs' Request for Additional Time</u>

Plaintiffs stated that they cannot know for sure what other problems may be lurking in the data, and that working on the big issues has left open the possibility that some small issues have gone unnoticed. Therefore, plaintiffs requested that the court grant additional time to find any other issues in the data produced.

It is apparent that the plaintiffs' request is based on speculation. This has been a lengthy discovery dispute and both sides have had ample time to work through the issues and problems that have arisen. All the major issues necessary for the parties to prosecute and defend this case have been resolved. Speculation, particularly at this point in the litigation, is not a basis for giving the plaintiffs more time to locate what they themselves characterize as other possible, small issues. The burden and/or expense that would result from allowing the additional time, clearly outweighs any incremental benefit that might be obtained from raising and addressing small issues.

<u>Sanctions Under Rule 37(a) and (b)</u>

With the previous motion each side had to bear their own costs incurred in connection with the discovery dispute. However, the defendants' errors and delay in the production since the order

issued last October,[14] resulted in further delay and the plaintiffs having to file another motion to compel. In these circumstances the plaintiffs are entitled to reasonable fees and expenses under Rule 37.

For having to file the present motion and work to obtain the discovery ordered since October 2007, the plaintiffs requested an estimated amount of $10,000 in fees and expenses. The court cannot award this amount merely based on an estimate contained in the plaintiffs' memorandum. Plaintiffs must support their request for monetary sanctions with itemized, contemporaneous billing and expense records from the relevant time period - October 20, 2007 through June 30, 2008. Plaintiffs will be allowed 30 days to file their time and expense records and a supplemental memorandum in support of their claim for fees and expenses.

## Conclusion

Accordingly, the Motion for Sanctions and/or Additional Discovery Orders filed by plaintiffs Southern Capitol Enterprises and F. David Tutt, is granted in part. Defendants are ordered to produce the policy lists/data from the two small operating systems and the complete vested agents list within 30 days.[15] Plaintiffs are awarded reasonable fees and expenses under Rule 37. Plaintiffs

---

[14] The discovery order issued October 10, 2007 ordered the defendants to provide the documents and answers within 20 days. The record does not reflect any substantial justification for long delay in the defendants' production.

[15] See pages 6 and 9-10 of this ruling.

shall file a supplemental memorandum and their time and expense records within 30 days. Defendants shall have 15 days after the plaintiffs file their supplemental memorandum to file a response.

All of the remaining aspects of the plaintiffs' motion are denied.

Baton Rouge, Louisiana, October 24, 2008.

*signature: Stephen C. Riedlinger*

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE